AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>Subject Premises 935 3rd Street, Apt. 5, Blaine, WA;<br>Subject Person Harold Hobbs, DOB XX/XX/1963 | )<br>)<br>)<br>)<br>)<br>)   Case No.  **MJ18-540** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

The Subject Premises and Subject Person as further described in Attachment A, which is attached hereto and incorporated herein by this reference.

located in the _____**Western**_____ District of _____**Washington**_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and incorporated herein by this reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C. § 2252 (a)(2) | Receipt or Distribution of Child Pornography |
| Title 18, U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 USC § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SPECIAL AGENT TOBY LEDGERWOOD, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  **11-19-18**

_____
*Judge's signature*

City and state:  **BELLINGHAM, WASHINGTON**

PAULA L. MCCANDLIS, U.S. MAGISTRATE JUDGE
*Printed name and title*

2018R01394

## ATTACHMENT A
### Description of Property to be Searched

The physical address of the SUBJECT PREMISES is 935 3rd St., Apartment 5, Blaine, Washington, and is more fully described as a single story apartment unit within a single story apartment building. The unit has gray colored siding and a white entry door. A number 5 is affixed at the top right of the white door. The number is black in color. The apartment building has a metal overhanging roof.

The search is to include all rooms within the SUBJECT PREMISES, and all garages or storage rooms, attached or detached, or other outbuildings, as well as vehicles located on the SUBJECT PREMISES, and any digital device(s) found therein.

The SUBJECT PERSON is Harold HOBBS, DOB XX/XX/1963, pictured below:



ATTACHMENT A - 1
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT B
## ITEMS TO BE SEIZED

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed), photocopies or other photographic form, and electrical, electronic, and magnetic form (such as CDs, DVDs, smart cards, thumb drives, camera memory cards, electronic notebooks, or any other storage medium), that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) and any attempts to commit such offenses which may be found at the SUBJECT PREMISES or on the SUBJECT PERSON:

1.     Any visual depiction of minor(s) engaged in sexually explicit conduct, in any format or media.

2.     Evidence of the installation and use of P2P software, and any associated logs, saved user names and passwords, shared files, and browsing history;

3.     Letters, e-mail, text messages, and other correspondence identifying persons transmitting child pornography, or evidencing the transmission of child pornography, through interstate or foreign commerce, including by mail or by computer;

4.     All invoices, purchase agreements, catalogs, canceled checks, money order receipts, credit card statements or other documents pertaining to the transportation or purchasing of images of minors engaged in sexually explicit conduct;

5.     Any and all address books, names, lists of names, telephone numbers, and addresses of individuals engaged in the transfer, exchange, or sale of child pornography;

6.     Any non-digital recording devices and non-digital media capable of storing images and videos.

7.     Digital devices and/or their components, which include, but are not limited to:

ATTACHMENT B - 1
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          a.     Any digital devices and storage device capable of being used to
2    commit, further, or store evidence of the offense listed above;

3          b.     Any digital devices used to facilitate the transmission, creation,
4    display, encoding or storage of data, including word processing equipment, modems,
5    docking stations, monitors, cameras, printers, encryption devices, and optical scanners;

6          c.     Any magnetic, electronic, or optical storage device capable of
7    storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or
8    memory buffers, smart cards, PC cards, memory sticks, flashdrives, USB/thumb drives,
9    camera memory cards, media cards, electronic notebooks, and personal digital assistants;

10          d.     Any documentation, operating logs and reference manuals regarding
11    the operation of the digital device or software;

12          e.     Any applications, utility programs, compilers, interpreters, and other
13    software used to facilitate direct or indirect communication with the computer hardware,
14    storage devices, or data to be searched;

15          f.     Any physical keys, encryption devices, dongles and similar physical
16    items that are necessary to gain access to the computer equipment, storage devices or
17    data; and

18          g.     Any passwords, password files, test keys, encryption codes or other
19    information necessary to access the computer equipment, storage devices or data;

20      8.     Evidence of who used, owned or controlled any seized digital device(s) at
21    the time the things described in this warrant were created, edited, or deleted, such as logs,
22    registry entries, saved user names and passwords, documents, and browsing history;

23      9.     Evidence of malware that would allow others to control any seized digital
24    device(s) such as viruses, Trojan horses, and other forms of malicious software, as well
25    as evidence of the presence or absence of security software designed to detect malware;
26    as well as evidence of the lack of such malware;

27      10.     Evidence of the attachment to the digital device(s) of other storage devices
28    or similar containers for electronic evidence;

ATTACHMENT B - 2
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     11.     Evidence of counter-forensic programs (and associated data) that are

2     designed to eliminate data from a digital device;

3     12.     Evidence of times the digital device(s) was used;

4     13.     Any other ESI from the digital device(s) necessary to understand how the

5     digital device was used, the purpose of its use, who used it, and when.

6     14.     Records and things evidencing the use of the IP address including:

7          a.     Routers, modems, and network equipment used to connect

8     computers to the Internet;

9          b.     Records of Internet Protocol (IP) addresses used;

10         c.     Records of Internet activity, including firewall logs, caches, browser

11    history and cookies, "bookmarked" or "favorite" web pages, search terms that the user

12    entered into any Internet search engine, and records of user-typed web addresses.

13

14    **The seizure of digital devices and/or their components as set forth herein is
      specifically authorized by this search warrant, not only to the extent that such
15    digital devices constitute instrumentalities of the criminal activity described above,
      but also for the purpose of the conducting off-site examinations of their contents for
16    evidence, instrumentalities, or fruits of the aforementioned crimes.**

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**AFFIDAVIT**

STATE OF WASHINGTON          )
                                              )     ss
COUNTY OF WHATCOM        )

    I, Toby Ledgerwood, being duly sworn on oath, depose and state:

## I. INTRODUCTION AND AGENT BACKGROUND

    1.    I am a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations (HSI), assigned to the Assistant Special Agent in Charge (ASAC) Blaine, Washington, field office. I have been employed as an HSI Special Agent since 2006. Prior to this assignment, I worked as a United States Customs Inspector from 2002 to 2006. In my capacity as a Special Agent, I am responsible for conducting investigations into the numerous federal laws enforced by HSI. Since 2013, I have investigated criminal violations relating to child exploitation and child pornography, including violations pertaining to the unlawful production, importation, distribution, receipt, attempted receipt, and possession of child pornography and material involving the sexual exploitation of minors in violation of 18 U.S.C. §§ 2251, 2252(a), and 2252A(a). I am a graduate of the Federal Law Enforcement Training Center (FLETC), HSI Special Agent Training Program, and have received further specialized training in investigating child pornography and child exploitation crimes. My training included courses in law enforcement techniques, federal criminal statutes, conducting criminal investigations, and the execution of search warrants. I have observed and reviewed thousands of examples of child pornography (as defined in 18 U.S.C. § 2256(8)). I have participated in the execution of many search warrants, which involved child exploitation and/or child pornography offenses and the search and seizure of computers and other digital devices. Further, I have served as the affiant on numerous search warrants and complaints relating to child exploitation investigations. I am a member of the Internet

SA LEDGERWOOD AFFIDAVIT - 1
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Crimes Against Children (ICAC) Task Force in the Western District of Washington, and
2  work with other federal, state, and local law enforcement personnel in the investigation
3  and prosecution of crimes involving the sexual exploitation of children.  I have attended
4  periodic seminars, meetings, and training.  I attended the ICAC Undercover
5  Investigations Training Program in Alexandria, Virginia, in June 2014 regarding child
6  exploitation.  I also attended the Crimes Against Children Conference in Dallas, Texas, in
7  August 2014, where I received training relating to child exploitation, including training in
8  the Ares Peer to Peer (P2P) file sharing program.  In September 2015, I received training
9  in the Emule (P2P) file sharing program.  I received a Bachelor of Science degree in
10  Criminal Justice with a minor in Sociology from the University of Missouri-St. Louis.
11          2.      I am submitting this affidavit in support of an application under Rule 41 of
12  the Federal Rules of Criminal Procedure for a warrant to search the residence located at
13  935 3rd St., #5, Blaine, Washington 98230 (hereinafter the "SUBJECT PREMISES")
14  more fully described in Attachment A, for the things specified in Attachment B to this
15  Affidavit, for the reasons set forth below. I also seek authority to examine digital devices
16  or other electronic storage media.  The property to be searched is as follows:
17          a.      935 3rd St., Apartment 5, Blaine, Washington 98230 (the SUBJECT
18  PREMISES);
19          b.      Harold Hobbs (the SUBJECT PERSON)
20          3.      The warrant would authorize a search of the SUBJECT PREMISES and the
21  SUBJECT PERSON and the seizure and forensic examination of digital devices found
22  therein, for the purpose of identifying electronically stored data as particularly described
23  in Attachment B, for evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§
24  2252(a)(2) (Receipt or Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B)
25  (Possession of Child Pornography), and any attempts to commit such offenses.
26          4.      The facts set forth in this Affidavit are based on my own personal
27  knowledge; knowledge obtained from other individuals during my participation in this
28  investigation, including other law enforcement officers; review of documents and records

SA LEDGERWOOD AFFIDAVIT - 2
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   related to this investigation; communications with others who have personal knowledge

2   of the events and circumstances described herein; and information gained through my

3   training and experience.

4        5.   Because this affidavit is submitted for the limited purpose of establishing

5   probable cause in support of the application for a search warrant, it does not set forth

6   each and every fact that I or others have learned during the course of this investigation.  I

7   have set forth only the facts that I believe are relevant to the determination of probable

8   cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. §

9   2252(a)(2) (Receipt or Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B)

10   (Possession of Child Pornography) and any attempts to commit such offenses, will be

11   found at the SUBJECT PREMISES or on the SUBJECT PERSON.

12        6.   Based on the discoveries I have made, as described below, I believe that the

13   SUBJECT PERSON has used an electronic communications device with phone number

14   360-389-7394 to solicit child pornography by attempting to pay for such material.  I

15   further believe that computers, cellular phones, and other digital devices containing

16   evidence of child pornography will be located at the SUBJECT PREMISES or on the

17   SUBJECT PERSON.

18                                   **II. DEFINITIONS**

19        7.   The following definitions apply to this Affidavit:

20                               <u>Internet Service Providers</u>

21        a.   "Internet Service Providers" (ISPs), as used herein, are commercial

22   organizations that are in business to provide individuals and businesses access to the

23   internet.  ISPs provide a range of functions for their customers including access to the

24   Internet, web hosting, email, remote storage, and co-location of computers and other

25   communications equipment.  ISPs can offer a range of options in providing access to the

26   Internet including telephone based dial up, broadband based access via digital subscriber

27   line (DSL) or cable television, dedicated circuits, or satellite based subscription.  ISPs

28   typically charge a fee based upon the type of connection and volume of data, called

SA LEDGERWOOD AFFIDAVIT - 3
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  bandwidth, which the connection supports.  Many ISPs assign each subscriber an account

2  name – a user name or screen name, an "email address," an email mailbox, and a

3  personal password selected by the subscriber.  By using a computer equipped with a

4  modem, the subscriber can establish communication with an ISP over a telephone line,

5  through a cable system or via satellite, and can access the Internet by using his or her

6  account name and personal password.  ISPs maintain records pertaining to their

7  subscribers (regardless of whether those subscribers are individuals or entities).  These

8  records may include account application information, subscriber and billing information,

9  account access information (often times in the form of log files), email communications,

10  information concerning content uploaded and/or stored on or via the ISP's servers.

11                                  Internet Protocol (IP) Addresses

12              b.      "Internet Protocol address" or "IP address" refers to a unique

13  number used by a computer to access the Internet.  An IP address looks like a series of

14  four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every

15  computer connected to the Internet must be assigned an IP address so that the Internet

16  traffic sent from, and directed to, that computer may be properly directed from its source

17  to its destination.  Most ISPs control the range of IP addresses.

18                                      **III. SYNOPSIS**

19              8.      This investigation involves the use of an electronic communications device

20  utilized by Harold Hobbs to communicate with a known adult female to solicit child

21  pornography.  The adult female, B.D., stated she was contacted on February 12, 2018, by

22  someone answering an ad she posted who asked for naked pictures of fourteen to sixteen

23  year old white females.  That individual identified himself as Harold Hobbs.

24                          **IV. STATEMENT OF PROBABLE CAUSE**

25              9.      On February 20, 2018, human trafficking task force officers (TFOs) from

26  Omaha's Child Exploitation Task Force (CETF) responded to a Backpage.com ad

27  (personals section) for prostitution.  The ad featured B.D., date of birth XX/XX/1978.

28  TFOs made contact with B.D., and she told them that she had communicated with

SA LEDGERWOOD AFFIDAVIT - 4
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  someone via text who asked her to send him naked pictures of minors.  She said this

2  individual first reached out to her in February 2018.

3       10.   Law enforcement conducted a search of B.D.'s cell phone and identified a

4  series of text messages B.D. exchanged with an individual later identified as Harold

5  HOBBS in February 2018.

6       11.   In these messages, HOBBS repeatedly asks B.D. to send him naked photos

7  of minors in exchange for money.  B.D. declined these requests, offering only to send

8  him photos of adult females.  The excerpts below are taken from B.D.'s cellular phone.

| | |
|---|---|
| HOBBS: | I'm out of town now. Was wanting pics for money today. Not necessarily of you. Are you interested? |
| B.D: | Yes I am |
| *** | |
| HOBBS: | Am wanting pics (white only) of pussy and tits. Can you do? |
| *** | |
| HOBBS: | How young can you do? |
| B.D.: | 20 |
| HOBBS: | Younger? |
| B.D.: | Thats youngest |
| HOBBS: | Maybe 16? |
| B.D.: | No way |
| HOBBS: | 18 then? |
| B.D.: | Ya |
| HOBBS: | Ok then. Lets make a deal |
| *** | |
| HOBBS: | Was thinking about young girls. Can you do? |
| B.D.: | 18 |

SA LEDGERWOOD AFFIDAVIT - 5
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | |
|---|---|---|
| 1 | HOBBS: | Was wanting under that |
| 2 | B.D.: | No |
| 3 | HOBBS: | More money for them |
| 4 | | |
| 5 | B.D.: | No |
| 6 | HOBBS: | Ok if you get in a jam look me up |
| 7 | \*\*\* | |
| 8 | HOBBS: | Want pics of girls 10 - 16 |
| 9 | B.D.: | I said 18 year olds |
| 10 | | |
| 11 | HBOBS: | How is 15 and above ? |

12.     Believing that B.D. was going to send him photos, HOBBS used Western Union to send B.D. $120.00 on February 12, 2018.  In a text message, HOBBS identified himself as HAROLD HOBBS from Washington State.  HOBBS provided the tracking number of the Western Union transaction: 703 470 9028. B.D. did pick up the money from a Western Union in Council Bluffs, Iowa but did not send HOBBS any photographs.

13.     On February 26, 2018, a county subpoena was served on Western Union requesting any and all information from the transaction number 703 470 9028. On February 27, 2018, Western Union replied to the subpoena with the following information:

Date of Transaction: 02-12-2018 Amount of Transaction: $120.00

Name of Sender: Harold Hobbs

Address of Sender: 250 H Street, #215, Blaine, WA 98230 (A Google searched revealed that 250 H Street is the address for Security Mail Services)

Phone Number of Sender: 360-389-7394

Sender's Date of Birth: XX-XX-1963

Sender's Credit Card Number: '1283

Sender's IP Address: 174.255.138.250

SA LEDGERWOOD AFFIDAVIT - 6
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     Sender's E-mail Address: BH262@hotmail.com

2     Sender's Preferred Western Union Customer Card for Frequent Users: 348825639

3     Method of Transaction: Internet

4         14.    The same phone number HOBBS used to communicate with B.D., 360-389-7394, was listed by HOBBS as his phone number on the Western Union transaction. Using the information provided in the subpoena return, Omaha CETF personnel were able to identify HOBBS as: HAROLD GENE HOBBS, date of birth XX-XX-1963, SSN: (REDACTED) of Blaine, WA.

         15.    On November 1, 2018, Homeland Security Investigations (HSI) Blaine, Washington, received the information from the Bellingham, Washington, FBI office regarding the individual soliciting child pornography using phone number 360-389-7394.

         16.    Searches in CLEAR, a law enforcement database, identified HAROLD HOBBS, 935 3rd St., Apartment 5, Blaine, WA 98245, SSN [REDACTED], DOB XX/XX/1963, phone number 360-389-7394.  The report indicated HOBBS was living at the SUBJECT PREMISES in February 2018.

         17.    On November 1, 2018, at approximately 4:40 p.m., I conducted surveillance of the SUBJECT PREMISES and observed the following vehicle parked in the driveway:  A silver color Saturn with Washington State license plate BKK7360. Records checks revealed that the vehicle is registered to HOBBS at the SUBJECT PREMISES.

         18.    On November 15, 2018, I conducted a search via the Washington State Department of Licensing (WSDOL) and learned that Harold Hobbs was issued a Washington State driver's license on August 21, 2018, with the SUBJECT PREMISES listed as his address.

         19.    As outlined above, multiple sources of information indicate that Harold HOBBS currently resides at the SUBJECT PREMISES and resided there on the dates that the text messages soliciting child pornography were sent.  I believe that Hobbs used

SA LEDGERWOOD AFFIDAVIT - 7
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  at least one electronic communications device to solicit child pornography, and that

2  evidence of that crime will be found in the SUBJECT PREMISES.

### V. PRIOR EFFORTS TO OBTAIN EVIDENCE

4      20.    Any other means of obtaining the necessary evidence to prove the elements

5  of electronic communications devices/computer/Internet-related crimes, for example, a

6  consent search, could result in an unacceptable risk of the loss/destruction of the evidence

7  sought.  If agents pursued a consent-based interview with Harold Hobbs, or any other

8  unknown resident(s) or occupant(s) of the SUBJECT PREMISES, they could rightfully

9  refuse to give consent and the user who solicited child pornography from an electronic

10  communications device at the SUBJECT PREMISES could arrange for destruction of all

11  evidence of the crime before agents could return with a search warrant.  Based on my

12  knowledge, training and experience, the only effective means of collecting and

13  preserving the required evidence in this case is through a search warrant.  Based on my

14  knowledge, no prior search warrant has been obtained to search the SUBJECT

15  PREMISES.

### VI.  TECHNICAL BACKGROUND

17      21.    Based on my training and experience, when an individual communicates

18  through the Internet, the individual leaves an IP address which identifies the individual

19  user by account and ISP (as described above).  When an individual is using the Internet,

20  the individual's IP address is visible to administrators of websites they visit.  Further, the

21  individual's IP address is broadcast during most Internet file and information exchanges

22  that occur.

23      22.    Based on my training and experience, I know that most ISPs provide only

24  one IP address for each residential subscription.   I also know that individuals often use

25  multiple digital devices within their home to access the Internet, including desktop and

26  laptop computers, tablets, and mobile phones.  A device called a router is used to connect

27  multiple digital devices to the Internet via the public IP address assigned (to the

28  subscriber) by the ISP.  A wireless router performs the functions of a router but also

SA LEDGERWOOD AFFIDAVIT - 8
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   includes the functions of a wireless access point, allowing (wireless equipped) digital

2   devices to connect to the Internet via radio waves, not cables.  Based on my training and

3   experience, today many residential Internet customers use a wireless router to create a

4   computer network within their homes where users can simultaneously access the Internet

5   (with the same public IP address) with multiple digital devices.

6       23.     Based on my training and experience and information provided to me by

7   computer forensic agents, I know that data can quickly and easily be transferred from one

8   digital device to another digital device.  Data can be transferred from computers or other

9   digital devices to internal and/or external hard drives, tablets, mobile phones, and other

10  mobile devices via a USB cable or other wired connection.  Data can also be transferred

11  between computers and digital devices by copying data to small, portable data storage

12  devices including USB (often referred to as "thumb") drives, memory cards (Compact

13  Flash, SD, microSD, etc.) and memory card readers, and optical discs (CDs/DVDs).

14      24.     As outlined above, residential Internet users can simultaneously access the

15  Internet in their homes with multiple digital devices.  Also explained above is how data

16  can quickly and easily be transferred from one digital device to another through the use

17  of wired connections (hard drives, tablets, mobile phones, etc.) and portable storage

18  devices (USB drives, memory cards, optical discs).  Therefore, a user could access the

19  Internet using their assigned public IP address, receive, transfer or download data, and

20  then transfer that data to other digital devices which may or may not have been connected

21  to the Internet during the date and time of the specified transaction.

22      25.     Based on my training and experience, I have learned that the computer's

23  ability to store images and videos in digital form makes the computer itself an ideal

24  repository for child pornography.  The size of hard drives used in computers (and other

25  digital devices) has grown tremendously within the last several years.  Hard drives with

26  the capacity of four (4) terabytes (TB) are not uncommon.  These drives can store

27  thousands of images and videos at very high resolution.

28

SA LEDGERWOOD AFFIDAVIT - 9
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

26.     Based on my training and experience, collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by companies such as Google, Yahoo, Apple, and Dropbox, among others.  The online services allow a user to set up an account with a remote computing service that provides email services and/or electronic storage of computer files in any variety of formats.  A user can set up an online storage account from any computer with access to the Internet.  Evidence of such online storage of child pornography is often found on the user's computer.  Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

27.     As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes.  Storing this information can be intentional, i.e., by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files.  Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others).  In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" and history files of the browser application used.  A forensic examiner often can recover evidence suggesting whether a computer contains wireless software, and when certain files under investigation were uploaded or downloaded.  Such information is often maintained indefinitely until overwritten by other data.

28.     Based on my training and experience, I have learned that producers of child pornography can produce image and video digital files from the average digital camera, mobile phone, or tablet.  These files can then transferred from the mobile device to a computer or other digital device, using the various methods described above.  The digital files can then be stored, manipulated, transferred, or printed directly from a computer or other digital device.  Digital files can also be edited in ways similar to those by which a photograph may be altered; they can be lightened, darkened, cropped, or otherwise

SA LEDGERWOOD AFFIDAVIT - 10
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   manipulated.  As a result of this technology, it is relatively inexpensive and technically

2   easy to produce, store, and distribute child pornography.  In addition, there is an added

3   benefit to the child pornographer in that this method of production is a difficult trail for

4   law enforcement to follow.

5       29.     As part of my training and experience, I have become familiar with the

6   structure of the Internet, and I know that connections between computers on the Internet

7   routinely cross state and international borders, even when the computers communicating

8   with each other are in the same state.   Individuals and entities use the Internet to gain

9   access to a wide variety of information; to send information to, and receive information

10  from, other individuals; to conduct commercial transactions; and to communicate via

11  email.

12      30.     Based on my training and experience, I know that cellular mobile phones

13  (often referred to as "smart phones") have the capability to access the Internet and store

14  information, such as images and videos.  As a result, an individual using a smart phone

15  can send, receive, and store files, including child pornography, without accessing a

16  personal computer or laptop.  An individual using a smart phone can also easily connect

17  the device to a computer or other digital device, via a USB or similar cable, and transfer

18  data files from one digital device to another.

19      31.     As set forth herein and in Attachment B to this Affidavit, I seek permission

20  to search for and seize evidence, fruits, and instrumentalities of the above-referenced

21  crimes that might be found at the SUBJECT PREMISES on on the SUBJECT PERSON

22  in whatever form they are found.  It has been my experience that individuals involved in

23  child pornography often prefer to store images of child pornography in electronic form.

24  The ability to store images of child pornography in electronic form makes digital devices,

25  examples of which are enumerated in Attachment B to this Affidavit, an ideal repository

26  for child pornography because the images can be easily sent or received over the Internet.

27  As a result, one form in which these items may be found is as electronic evidence stored

28  on a digital device.

SA LEDGERWOOD AFFIDAVIT - 11
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

32.     Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know that there are certain characteristics common to individuals who have a sexualized interest in children and depictions of children:

a.      They may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b.      They may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides, and/or drawings or other visual media.  Such individuals often times use these materials for their own sexual arousal and gratification.  Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.  These individuals may keep records, to include names, contact information, and/or dates of these interactions, of the children they have attempted to seduce, arouse, or with whom they have engaged in the desired sexual acts.

c.      They often maintain any "hard copies" of child pornographic material that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location.  These individuals typically retain these "hard copies" of child pornographic material for many years, as they are highly valued.

d.      Likewise, they often maintain their child pornography collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area.  These collections are often maintained for several years and are kept close by, often at the individual's residence or some otherwise easily accessible location, to enable the owner to view the collection, which is valued highly. They also may opt to store the contraband in cloud accounts. Cloud storage is a model of

SA LEDGERWOOD AFFIDAVIT - 12
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   data storage where the digital data is stored in logical pools, the physical storage can span
2   multiple servers, and often locations, and the physical environment is typically owned
3   and managed by a hosting company. Cloud storage allows the offender ready access to
4   the material from any device that has an Internet connection, worldwide, while also
5   attempting to obfuscate or limit the criminality of possession as the material is stored
6   remotely and not on the offender's device.

7           e.      They also may correspond with and/or meet others to share
8   information and materials; rarely destroy correspondence from other child pornography
9   distributors/collectors; conceal such correspondence as they do their sexually explicit
10  material; and often maintain lists of names, addresses, and telephone numbers of
11  individuals with whom they have been in contact and who share the same interests in
12  child pornography.

13          f.      They generally prefer not to be without their child pornography for
14  any prolonged time period.  This behavior has been documented by law enforcement
15  officers involved in the investigation of child pornography throughout the world.

16          g.      E-mail itself provides a convenient means by which individuals can
17  access a collection of child pornography from any computer, at any location with Internet
18  access.  Such individuals therefore do not need to physically carry their collections with
19  them but rather can access them electronically.   Furthermore, these collections can be
20  stored on email "cloud" servers, which allow users to store a large amount of material at
21  no cost, without leaving any physical evidence on the users' computer(s).

22      33.     In addition to offenders who collect and store child pornography, law
23  enforcement has encountered offenders who obtain child pornography from the internet,
24  view the contents and subsequently delete the contraband, often after engaging in self-
25  gratification.  In light of technological advancements, increasing Internet speeds and
26  worldwide availability of child sexual exploitative material, this phenomenon offers the
27  offender a sense of decreasing risk of being identified and/or apprehended with quantities
28  of contraband. This type of consumer is commonly referred to as a 'seek and delete'

SA LEDGERWOOD AFFIDAVIT - 13
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

offender, knowing that the same or different contraband satisfying their interests remain easily discoverable and accessible online for future viewing and self-gratification. I know that, regardless of whether a person discards or collects child pornography he/she accesses for purposes of viewing and sexual gratification, evidence of such activity is likely to be found on computers and related digital devices, including storage media, used by the person. This evidence may include the files themselves, logs of account access events, contact lists of others engaged in trafficking of child pornography, backup files, and other electronic artifacts that may be forensically recoverable.

34. Given the above-stated facts, my training and experience, along with my discussions with other law enforcement officers who investigate child exploitation crimes, I believe that the user of the electronic communications device with phone number 360-389-7394 likely has a sexualized interest in children and depictions of children. I therefore believe that evidence of child pornography is likely to be found at the SUBJECT PREMISES or on the SUBJECT PERSON.

35. Based on my training and experience, and that of computer forensic agents that I work and collaborate with on a daily basis, I know that every type and kind of information, data, record, sound or image can exist and be present as electronically stored information on any of a variety of computers, computer systems, digital devices, and other electronic storage media. I also know that electronic evidence can be moved easily from one digital device to another. As a result, I believe that electronic evidence may be stored on any digital device present at the SUBJECT PREMISES or on the SUBJECT PERSON.

36. Based on my training and experience, and my consultation with computer forensic agents who are familiar with searches of computers, I know that in some cases the items set forth in Attachment B may take the form of files, documents, and other data that is user-generated and found on a digital device. In other cases, these items may take the form of other types of data - including in some cases data generated automatically by the devices themselves.

SA LEDGERWOOD AFFIDAVIT - 14
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

37.     Based on my training and experience, and my consultation with computer forensic agents who are familiar with searches of computers, I believe that if digital devices are found in the SUBJECT PREMISE or on the SUJBECT PERSON, there is probable cause to believe that the items set forth in Attachment B will be stored in those digital devices for a number of reasons, including but not limited to the following:

a.     Once created, electronically stored information (ESI) can be stored for years in very little space and at little or no cost. A great deal of ESI is created, and stored, moreover, even without a conscious act on the part of the device operator. For example, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache," without the knowledge of the device user. The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes affirmative steps to delete them. This ESI may include relevant and significant evidence regarding criminal activities, but also, and just as importantly, may include evidence of the identity of the device user, and when and how the device was used. Most often, some affirmative action is necessary to delete ESI. And even when such action has been deliberately taken, ESI can often be recovered, months or even years later, using forensic tools.

b.     Wholly apart from data created directly (or indirectly) by user-generated files, digital devices - in particular, a computer's internal hard drive - contain electronic evidence of how a digital device has been used, what is has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating systems or application operations, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible for a user to use such specialized software to delete this type of information - and, the use of such special software may itself result in ESI that is relevant to the criminal investigation. HSI agents in this case have consulted on computer

SA LEDGERWOOD AFFIDAVIT - 15
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  forensic matters with law enforcement officers with specialized knowledge and training

2  in computers, networks, and Internet communications.  In particular, to properly retrieve

3  and analyze electronically stored (computer) data, and to ensure accuracy and

4  completeness of such data and to prevent loss of the data either from accidental or

5  programmed destruction, it is necessary to conduct a forensic examination of the

6  computers.  To effect such accuracy and completeness, it may also be necessary to

7  analyze not only data storage devices, but also peripheral devices which may be

8  interdependent, the software to operate them, and related instruction manuals containing

9  directions concerning operation of the computer and software.

10  ### VII. SEARCH AND/OR SEIZURE OF DIGITAL DEVICES

11      38.    In addition, based on my training and experience and that of computer

12  forensic agents that I work and collaborate with on a daily basis, I know that in most

13  cases it is impossible to successfully conduct a complete, accurate, and reliable search for

14  electronic evidence stored on a digital device during the physical search of a search site

15  for a number of reasons, including but not limited to the following:

16      a.    Technical Requirements:  Searching digital devices for criminal

17  evidence is a highly technical process requiring specific expertise and a properly

18  controlled environment.  The vast array of digital hardware and software available

19  requires even digital experts to specialize in particular systems and applications, so it is

20  difficult to know before a search which expert is qualified to analyze the particular

21  system(s) and electronic evidence found at a search site.  As a result, it is not always

22  possible to bring to the search site all of the necessary personnel, technical manuals, and

23  specialized equipment to conduct a thorough search of every possible digital

24  device/system present.  In addition, electronic evidence search protocols are exacting

25  scientific procedures designed to protect the integrity of the evidence and to recover even

26  hidden, erased, compressed, password-protected, or encrypted files.  Since ESI is

27  extremely vulnerable to inadvertent or intentional modification or destruction (both from

28  external sources or from destructive code embedded in the system such as a "booby

SA LEDGERWOOD AFFIDAVIT - 16
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  trap"), a controlled environment is often essential to ensure its complete and accurate

2  analysis.

3          b.      Volume of Evidence:  The volume of data stored on many digital

4  devices is typically so large that it is impossible to search for criminal evidence in a

5  reasonable period of time during the execution of the physical search of a search site.  A

6  single megabyte of storage space is the equivalent of 500 double-spaced pages of text.  A

7  single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000

8  double-spaced pages of text. Computer hard drives are now being sold for personal

9  computers capable of storing up to four terabytes (4,000 gigabytes of data.)  Additionally,

10  this data may be stored in a variety of formats or may be encrypted (several new

11  commercially available operating systems provide for automatic encryption of data upon

12  shutdown of the computer).

13          c.      Search Techniques:  Searching the ESI for the items described in

14  Attachment B may require a range of data analysis techniques.  In some cases, it is

15  possible for agents and analysts to conduct carefully targeted searches that can locate

16  evidence without requiring a time-consuming manual search through unrelated materials

17  that may be commingled with criminal evidence.   In other cases, however, such

18  techniques may not yield the evidence described in the warrant, and law enforcement

19  personnel with appropriate expertise may need to conduct more extensive searches, such

20  as scanning areas of the disk not allocated to listed files, or peruse every file briefly to

21  determine whether it falls within the scope of the warrant.

22          39.    In this particular case, and in order to protect the third party privacy of

23  innocent individuals residing in the residence, the following are search techniques that

24  will be applied:

25          i.      Device use and ownership will be determined through interviews, if

26  possible, and through the identification of user account(s), associated account names, and

27  logons associated with the device.  Determination of whether a password is used to lock a

28

SA LEDGERWOOD AFFIDAVIT - 17
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  user's profile on the device(s) will assist in knowing who had access to the device or

2  whether the password prevented access.

3          ii.    Use of hash value library searches.

4          iii.    Use of keyword searches, i.e., utilizing key words that are known to

5  be associated with the sharing of child pornography.

6          iv.    Identification of non-default programs that are commonly known to

7  be used for the exchange and viewing of child pornography, such as, eMule, uTorrent,

8  BitTorrent, Ares, Shareaza, Gnutella, etc.

9          v.    Looking for file names indicative of child pornography, such as,

10  PTHC, PTSC, Lolita, 3yo, etc. and file names identified during the undercover download

11  of child pornography.

12          vi.    Viewing of image files and video files.

13          vii.    As indicated above, the search will be limited to evidence of child

14  pornography and will not include looking for personal documents and files that are

15  unrelated to the crime.

16      40.    These search techniques may not all be required or used in a particular

17  order for the identification of digital devices containing items set forth in Attachment B

18  to this Affidavit.  However, these search techniques will be used systematically in an

19  effort to protect the privacy of third parties.  Use of these tools will allow for the quick

20  identification of items authorized to be seized pursuant to Attachment B to this Affidavit,

21  and will also assist in the early exclusion of digital devices and/or files which do not fall

22  within the scope of items authorized to be seized pursuant to Attachment B to this

23  Affidavit.

24      41.    In accordance with the information in this Affidavit, law enforcement

25  personnel will execute the search of digital devices seized pursuant to this warrant as

26  follows:

27          a.    Upon securing the search site, the search team will conduct an initial

28  review of any digital devices/systems to determine whether the ESI contained therein can

SA LEDGERWOOD AFFIDAVIT - 18
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 be searched and/or duplicated on site in a reasonable amount of time and without
2 jeopardizing the ability to accurately preserve the data.

3       b.    If, based on their training and experience, and the resources
4 available to them at the search site, the search team determines it is not practical to make
5 an on-site search, or to make an on-site copy of the ESI within a reasonable amount of
6 time and without jeopardizing the ability to accurately preserve the data, then the digital
7 devices will be seized and transported to an appropriate law enforcement laboratory for
8 review and to be forensically copied ("imaged"), as appropriate.

9       c.    In order to examine the ESI in a forensically sound manner, law
10 enforcement personnel with appropriate expertise will produce a complete forensic
11 image, if possible and appropriate, of any digital device that is found to contain data or
12 items that fall within the scope of Attachment B of this Affidavit.  In addition,
13 appropriately trained personnel may search for and attempt to recover deleted, hidden, or
14 encrypted data to determine whether the data fall within the list of items to be seized
15 pursuant to the warrant.  In order to search fully for the items identified in the warrant,
16 law enforcement personnel, which may include investigative agents, may then examine
17 all of the data contained in the forensic image/s and/or on the digital devices to view their
18 precise contents and determine whether the data fall within the list of items to be seized
19 pursuant to the warrant.

20       d.    The search techniques that will be used will be only those
21 methodologies, techniques and protocols as may reasonably be expected to find, identify,
22 segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to
23 this Affidavit.

24       e.    If, after conducting its examination, law enforcement personnel
25 determine that any digital device is an instrumentality of the criminal offenses referenced
26 above, the government may retain that device during the pendency of the case as
27 necessary to, among other things, preserve the instrumentality evidence for trial, ensure
28 the chain of custody, and litigate the issue of forfeiture.

SA LEDGERWOOD AFFIDAVIT - 19
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     42.    In order to search for ESI that falls within the list of items to be seized

2  pursuant to Attachment B to this Affidavit, law enforcement personnel will seize and

3  search the following items (heretofore and hereinafter referred to as "digital devices"),

4  subject to the procedures set forth above:

5         a.    Any digital device capable of being used to commit, further, or store

6  evidence of the offense(s) listed above;

7         b.    Any digital device used to facilitate the transmission, creation,

8  display, encoding, or storage of data, including word processing equipment, modems,

9  docking stations, monitors, printers, cameras, encryption devices, and optical scanners;

10         c.    Any magnetic, electronic, or optical storage device capable of

11  storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or

12  memory buffers, smart cards, PC cards, memory sticks, flash drives, thumb drives,

13  camera memory cards, media cards, electronic notebooks, and personal digital assistants;

14         d.    Any documentation, operating logs and reference manuals regarding

15  the operation of the digital device, or software;

16         e.    Any applications, utility programs, compilers, interpreters, and other

17  software used to facilitate direct or indirect communication with the device hardware, or

18  ESI to be searched;

19         f.    Any physical keys, encryption devices, dongles and similar physical

20  items that are necessary to gain access to the digital device, or ESI; and

21         g.    Any passwords, password files, test keys, encryption codes or other

22  information necessary to access the digital device or ESI.

23            **VIII. CONCLUSION**

24     43.    Based on the foregoing, I believe there is probable cause that evidence,

25  fruits, and instrumentalities of violations of 18 U.S.C. § 2252(a)(2) (Receipt or

26  Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child

27  Pornography) and any attempts to commit such offenses, are located at the SUBJECT

28  PREMISES or on the SUBJECT PERSON as more fully described in Attachment A to

SA LEDGERWOOD AFFIDAVIT - 20
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  this Affidavit, as well as on and in any digital devices found therein.  I therefore request

2  that the court issue a warrant authorizing a search of the location, vehicles, and person

3  specified in Attachment A for the items more fully described in Attachment B.

Toby Ledgerwood, Affiant
Special Agent
Department of Homeland Security
Homeland Security Investigations

SUBSCRIBED and SWORN to before me this __19th__ day of November, 2018.

PAULA L. MCCANDLIS
United States Magistrate Judge

SA LEDGERWOOD AFFIDAVIT - 21
USAO #2018R01394

## ATTACHMENT A

### Description of Property to be Searched

The physical address of the SUBJECT PREMISES is 935 3rd St., Apartment 5, Blaine, Washington, and is more fully described as a single story apartment unit within a single story apartment building. The unit has gray colored siding and a white entry door. A number 5 is affixed at the top right of the white door. The number is black in color. The apartment building has a metal overhanging roof.

The search is to include all rooms within the SUBJECT PREMISES, and all garages or storage rooms, attached or detached, or other outbuildings, as well as vehicles located on the SUBJECT PREMISES, and any digital device(s) found therein.

The SUBJECT PERSON is Harold HOBBS, DOB XX/XX/1963, pictured below:



ATTACHMENT A - 1
USAO #2018R01394

# ATTACHMENT B
## ITEMS TO BE SEIZED

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed), photocopies or other photographic form, and electrical, electronic, and magnetic form (such as CDs, DVDs, smart cards, thumb drives, camera memory cards, electronic notebooks, or any other storage medium), that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) and any attempts to commit such offenses which may be found at the SUBJECT PREMISES or on the SUBJECT PERSON:

1.    Any visual depiction of minor(s) engaged in sexually explicit conduct, in any format or media.

2.    Evidence of the installation and use of P2P software, and any associated logs, saved user names and passwords, shared files, and browsing history;

3.    Letters, e-mail, text messages, and other correspondence identifying persons transmitting child pornography, or evidencing the transmission of child pornography, through interstate or foreign commerce, including by mail or by computer;

4.    All invoices, purchase agreements, catalogs, canceled checks, money order receipts, credit card statements or other documents pertaining to the transportation or purchasing of images of minors engaged in sexually explicit conduct;

5.    Any and all address books, names, lists of names, telephone numbers, and addresses of individuals engaged in the transfer, exchange, or sale of child pornography;

6.    Any non-digital recording devices and non-digital media capable of storing images and videos.

7.    Digital devices and/or their components, which include, but are not limited to:

ATTACHMENT B - 1
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        a.    Any digital devices and storage device capable of being used to

2  commit, further, or store evidence of the offense listed above;

3        b.    Any digital devices used to facilitate the transmission, creation,

4  display, encoding or storage of data, including word processing equipment, modems,

5  docking stations, monitors, cameras, printers, encryption devices, and optical scanners;

6        c.    Any magnetic, electronic, or optical storage device capable of

7  storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or

8  memory buffers, smart cards, PC cards, memory sticks, flashdrives, USB/thumb drives,

9  camera memory cards, media cards, electronic notebooks, and personal digital assistants;

10        d.    Any documentation, operating logs and reference manuals regarding

11  the operation of the digital device or software;

12        e.    Any applications, utility programs, compilers, interpreters, and other

13  software used to facilitate direct or indirect communication with the computer hardware,

14  storage devices, or data to be searched;

15        f.    Any physical keys, encryption devices, dongles and similar physical

16  items that are necessary to gain access to the computer equipment, storage devices or

17  data; and

18        g.    Any passwords, password files, test keys, encryption codes or other

19  information necessary to access the computer equipment, storage devices or data;

20      8.    Evidence of who used, owned or controlled any seized digital device(s) at

21  the time the things described in this warrant were created, edited, or deleted, such as logs,

22  registry entries, saved user names and passwords, documents, and browsing history;

23      9.    Evidence of malware that would allow others to control any seized digital

24  device(s) such as viruses, Trojan horses, and other forms of malicious software, as well

25  as evidence of the presence or absence of security software designed to detect malware;

26  as well as evidence of the lack of such malware;

27      10.    Evidence of the attachment to the digital device(s) of other storage devices

28  or similar containers for electronic evidence;

ATTACHMENT B - 2
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

11.     Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from a digital device;

12.     Evidence of times the digital device(s) was used;

13.     Any other ESI from the digital device(s) necessary to understand how the digital device was used, the purpose of its use, who used it, and when.

14.     Records and things evidencing the use of the IP address including:

        a.     Routers, modems, and network equipment used to connect computers to the Internet;

        b.     Records of Internet Protocol (IP) addresses used;

        c.     Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

**The seizure of digital devices and/or their components as set forth herein is specifically authorized by this search warrant, not only to the extent that such digital devices constitute instrumentalities of the criminal activity described above, but also for the purpose of the conducting off-site examinations of their contents for evidence, instrumentalities, or fruits of the aforementioned crimes.**

ATTACHMENT B - 3
USAO #2018R01394

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970